620 A.2d 15

**COMMONWEALTH of Pennsylvania**

v.

**Joseph C. SHOUP, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 11, 1992.

Filed Feb. 8, 1993.

14

David J. Rossi, Schuylkill Haven, for appellant.

Karen Byrnes, Asst. Dist. Atty., Pottsville, for Com., appellee.

Before ROWLEY, President Judge, and WIEAND and HUDOCK, JJ.

WIEAND, Judge.

Joseph C. Shoup was tried by jury and was found guilty of homicide by vehicle while driving under the influence of alcohol,[1] driving while under the influence of alcohol,[2] and homicide by vehicle.[3] The trial court, sitting as fact finder, found Shoup guilty also of the summary offense of reckless driving.[4] Post-trial motions were denied, and Shoup was sentenced to serve a term of imprisonment for not less than three and one-half (3½) years nor more than seven (7) years and to pay a fine in the amount of one thousand ($1,000.00) dollars.[5] On direct appeal from the judgment of sentence, Shoup asserts that the evidence at his trial was insufficient to

1. 75 Pa.C.S. § 3735.
2. 75 Pa.C.S. § 3731(a)(1) and (a)(4).
3. 75 Pa.C.S. § 3732.
4. 75 Pa.C.S. § 3714.
5. The convictions for driving while under the influence of alcohol and homicide by vehicle were deemed to merge for purposes of sentencing into the conviction for homicide by vehicle while driving under the influence of alcohol. On the summary conviction for reckless driving, Shoup was additionally sentenced to pay a fine of twenty-five ($25.00) dollars and the sum of thirty ($30.00) dollars into the Catastrophic Loss (CAT) Fund.

sustain his convictions. He contends further that the trial court committed reversible error in the following respects: (1) by granting a Commonwealth motion in limine to preclude the admission of evidence that the decedent was not wearing a seat belt at the time of the fatal accident; (2) by refusing to give points for charge requested by the defense on the issue of causation; and (3) by improperly permitting testimony as to the results of blood alcohol testing conducted upon appellant's blood despite the absence from trial of the person who actually performed such tests. We will consider these several issues seriatim.

In evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth, which has won the verdict, and draw all reasonable inferences in its favor. We then determine whether the evidence is sufficient to permit a jury to determine that each and every element of the crimes charged has been established beyond a reasonable doubt. See: *Commonwealth v. Aulisio*, 514 Pa. 84, 91, 522 A.2d 1075, 1079 (1987). See also: *Commonwealth v. Smith*, 523 Pa. 577, 581, 568 A.2d 600, 602 (1989); *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1169, 107 L.Ed.2d 1072 (1990). It is the function of the jury to pass upon the credibility of the witnesses and to determine the weight to be accorded the evidence produced. The jury is free to believe all, part or none of the evidence introduced at trial. See: *Commonwealth v. Guest*, 500 Pa. 393, 396, 456 A.2d 1345, 1347 (1983). See also: *Commonwealth v. Rose*, 463 Pa. 264, 268, 344 A.2d 824, 826 (1975); *Commonwealth v. Verdekal*, 351 Pa.Super. 412, 419–420, 506 A.2d 415, 419 (1986). The facts and circumstances established by the Commonwealth "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the jury unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'" *Commonwealth v. Sullivan*, 472 Pa. 129, 150, 371 A.2d 468, 478 (1977), quoting *Commonwealth v. Libonati*, 346 Pa. 504, 508, 31 A.2d 95, 97

(1943). See also: *Commonwealth v. Kravitz*, 400 Pa. 198, 215, 161 A.2d 861, 869 (1960), *cert. denied*, 365 U.S. 846, 81 S.Ct. 807, 5 L.Ed.2d 811 (1961).

■ So viewed, the evidence at appellant's trial established the following. On November 14, 1989, at or about 8:00 p.m., appellant was operating a brown Chevrolet Chevette automobile on Oak Street, a narrow alleyway located in the Borough of Girardville, Schuylkill County. Riding as passengers in appellant's vehicle were Michelle Shoup, his common law wife, who was seated in the front passenger seat, and Jean Moll and John Rush, who were in the back seat. Appellant was observed failing to stop for three consecutive stop signs, and the speed of his vehicle was estimated to be approximately fifty to fifty-five miles per hour. After driving through the intersection of Oak and Williams Streets, without stopping at the stop sign there erected for the control of traffic, appellant's vehicle collided with a large dump truck which had been parked in the alleyway, near a loading dock at a garment factory. The site of the accident was about thirty to thirty-five feet from the intersection.

Upon being summoned to the scene of the accident, Charles Harris, the Police Chief for the Borough of Girardville, observed that appellant had a strong odor of alcohol about his person and that there were several beer cans on the floor of the vehicle. All of the vehicle's occupants were initially pinned therein, and they, upon being removed from the vehicle, were transported for medical treatment. Appellant's common law wife suffered massive traumatic injuries and died shortly after being taken by helicopter to Geisinger Medical Center. Appellant was taken to Ashland State Hospital, where, at 9:30 p.m., blood samples were drawn at the request of Chief Harris for the purpose of determining appellant's blood alcohol level. Thereafter, two blood tests measured appellant's blood alcohol content at .176% and .175%.

At trial, the defense contended that the legal cause of Michelle Shoup's death had been the illegal parking of the dump truck with which appellant's vehicle collided. Police Chief Harris testified that there had been a no parking sign

posted at the loading dock where the dump truck was parked. However, according to Chief Harris, this sign had been placed there by the garment factory and not by the Borough. Therefore, he suggested, he was without legal authority to issue tickets for illegal parking at that location. Other testimony established that, despite poor lighting conditions, the dump truck could be seen from the intersection at Oak and Williams Streets. Additionally, both Jean Moll and John Rush described appellant's driving prior to the accident as erratic.

Causation is an essential element of a charge of criminal homicide, which the Commonwealth must prove beyond a reasonable doubt. *Commonwealth v. Webb,* 449 Pa. 490, 494, 296 A.2d 734, 737 (1972). See also: *Commonwealth v. Kingsley,* 480 Pa. 560, 569–570, 391 A.2d 1027, 1032 (1978); *Commonwealth v. Cheatham,* 419 Pa.Super. 603, 607, 615 A.2d 802, 805 (1992). The tort concept of proximate cause plays no role in a prosecution for criminal homicide. Rather, the Commonwealth must prove a more direct causal relationship between the defendant's conduct and the victim's death. *Commonwealth v. Barnhart,* 345 Pa.Super. 10, 28, 497 A.2d 616, 626 (1985), *cert. denied,* 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 34 (1988). See also: *Commonwealth v. Root,* 403 Pa. 571, 170 A.2d 310 (1961); *Commonwealth v. Lang,* 285 Pa.Super. 34, 426 A.2d 691 (1981). However,

it has never been the law of this Commonwealth that criminal responsibility must be confined to a sole or immediate cause of death. *Commonwealth v. Stafford,* 451 Pa. 95, 301 A.2d 600 (1973); *Commonwealth v. Carn,* 449 Pa. 228, 296 A.2d 753 (1972); *Commonwealth v. Johnson,* 445 Pa. 276, 284 A.2d 734 (1971); *Commonwealth v. Cheeks,* 423 Pa. 67, 223 A.2d 291 (1966); *Commonwealth ex rel. Peters v. Maroney,* 415 Pa. 553, 204 A.2d 459 (1964). Criminal responsibility is properly assessed against one whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result. *Commonwealth v. Stafford, supra.*

*Commonwealth v. Skufca,* 457 Pa. 124, 132–133, 321 A.2d 889, 894 (1974), *appeal dismissed,* 419 U.S. 1028, 95 S.Ct. 510, 42

L.Ed.2d 304 (1974). See also: *Commonwealth v. Rementer*, 410 Pa.Super. 9, 19–24, 598 A.2d 1300, 1305–1307 (1991); *Commonwealth v. Youngkin*, 285 Pa.Super. 417, 424–425, 427 A.2d 1356, 1359–1360 (1981); *Commonwealth v. Howard*, 265 Pa.Super. 535, 539–540, 402 A.2d 674, 676–677 (1979). Thus, "[a] defendant cannot escape the natural consequences of his act merely because of foreseeable complications." *Commonwealth v. Paquette*, 451 Pa. 250, 254, 301 A.2d 837, 839 (1973). So long as the defendant's conduct started the chain of causation which led to the victim's death, criminal responsibility for the crime of homicide may properly be found. See: *Commonwealth v. Hicks*, 466 Pa. 499, 505, 353 A.2d 803, 805 (1976). See also: *Commonwealth v. Massart*, 469 Pa. 572, 577, 366 A.2d 1229, 1232 (1975); *Commonwealth v. Stafford*, 451 Pa. 95, 100, 301 A.2d 600, 604 (1973); *Commonwealth v. Cheeks*, 423 Pa. 67, 73, 223 A.2d 291, 294 (1966).

In the instant case, a jury could find that appellant's conduct was a direct and substantial factor in bringing about the death of Michelle Shoup. The evidence disclosed that, while intoxicated, appellant drove his vehicle down a narrow, dimly lit alleyway, erratically and at a high rate of speed, failing to stop at three consecutive intersections where stop signs had been posted. Moreover, the evidence suggested that had appellant obeyed the stop sign at the intersection of Oak and Williams Streets, he would have been able to observe the dump truck parked in the alleyway. While the fact that the dump truck was parked in the alleyway undoubtedly contributed to the accident, it is abundantly clear that it was appellant's conduct which started an unbroken chain of causation leading to his wife's death. That another vehicle may have been parked in a hazardous manner was a foreseeable circumstance which did not relieve appellant from the natural consequences of his conduct. See: *Commonwealth v. Skufca, supra; Commonwealth v. Rementer, supra.*

Appellant also contends that there was insufficient evidence to establish that, at the time of the accident, the amount of alcohol by weight in his blood was .10% or greater. Specifically, he argues that his blood samples were taken an

hour and a half after the accident and the Commonwealth failed to present evidence which related the results of the blood alcohol tests back to the time of the accident. This issue, however, was not raised by appellant in either his post-trial motions or in his statement of matters complained of on appeal, and, as such, has been waived. "It is well settled that only issues raised in post-trial motions are preserved for appellate review." *Commonwealth v. Copeland,* 381 Pa.Super. 382, 385, 554 A.2d 54, 55 (1988). See also: *Commonwealth v. Gravely,* 486 Pa. 194, 198–199, 404 A.2d 1296, 1298 (1979). The Superior Court will not consider an issue that has been raised for the first time on appeal. See: *Commonwealth v. Gordon,* 364 Pa.Super. 521, 534–537, 528 A.2d 631, 638–639 (1987); *Commonwealth v. Bradshaw,* 324 Pa.Super. 249, 254–255, 471 A.2d 558, 560–561 (1984).

Appellant next asserts that the trial court erred when it granted a Commonwealth motion in limine precluding the defense from introducing evidence that the decedent was not wearing a seat belt at the time of the fatal accident. It is argued by appellant that the victim's failure to wear a seat belt was a substantial causative factor leading to her death, in that if she had been wearing a seat belt she may well have survived the accident.

"It is well-settled that 'an accused has a fundamental right to present defense evidence, so long as such evidence is relevant and not excluded by an established evidentiary rule.'" *Commonwealth v. Wells,* 396 Pa.Super. 70, 75, 578 A.2d 27, 30 (1990), *appeal dismissed,* 530 Pa. 35, 606 A.2d 1171 (1992), quoting *Commonwealth v. Uhrinek,* 518 Pa. 532, 542, 544 A.2d 947, 952 (1988). See also: *Commonwealth v. Eubanks,* 511 Pa. 201, 209–210, 512 A.2d 619, 624 (1986); *Commonwealth v. Greene,* 469 Pa. 399, 405, 366 A.2d 234, 237 (1976). Therefore, in prosecutions for homicide by vehicle and homicide by vehicle while driving under the influence, both the Supreme and Superior Courts have held that a defendant should be permitted to introduce evidence which establishes that something other than his violation of the Vehicle Code caused the accident and resulting death. See: *Common-*

*wealth v. Uhrinek, supra; Commonwealth v. Bartolacci,* 409
Pa.Super. 456, 460–462, 598 A.2d 287, 289–290 (1991). Howev-
er, in the instant case, evidence that the decedent failed to
wear a seat belt was barred by a specific statutory provision
and was not relevant to establish the cause of the fatal
accident. Therefore, such evidence was properly excluded by
the trial court.

The Vehicle Code provides at 75 Pa.C.S. § 4581(a)(2) that
"each driver and front seat occupant of a passenger car . . .
shall wear a properly adjusted and fastened safety seat belt
system." However, the legislature, in another subsection of
the same statute, provided further as follows:

> **(f) Criminal proceedings.**—The requirements of this
> subchapter or evidence of a violation of this subchapter are
> not admissible as evidence in a criminal proceeding except
> in a proceeding for a violation of this subchapter. No
> criminal proceeding for the crime of homicide by vehicle
> shall be brought on the basis of noncompliance with this
> subchapter.

75 Pa.C.S. § 4581(f). Thus, the legislature has specifically
prohibited evidence regarding a person's failure to wear a seat
belt from being introduced in a criminal proceeding except in
a proceeding for a violation of 75 Pa.C.S. § 4581. Because no
violation of § 4581(a)(2) was charged in the instant case,
evidence that the decedent was not wearing a seat belt at the
time of the accident was barred by the provisions of 75 Pa.C.S.
§ 4581(f).

■■■ At trial, appellant submitted the following proposed
points for charge to the trial court:

> 2. It is not enough to conclude that the Defendant's intoxi-
> cation was the most likely cause of the accident and death;
> causation must be established beyond a reasonable doubt.
> 3. Under our law speculation, possibilities, and probabili-
> ties cannot sustain a criminal conviction.

When the trial court failed to include the verbatim language of
these proposed points for charge in its final jury instructions,
appellant objected. He now argues that by failing to include
these points for charge, the trial court allowed the jury to

speculate as to the cause of the victim's death, and did not require an informed decision based upon the evidence. We disagree.

"In reviewing jury instructions to determine whether reversible error has been committed by a trial court, we consider the charge as a whole. Error will not be predicated on isolated excerpts. Rather, it is the general effect of the charge that controls." *Commonwealth v. Myers,* 376 Pa.Super. 41, 50, 545 A.2d 309, 314 (1988). See also: *Commonwealth v. Bowers,* 400 Pa.Super. 377, 392, 583 A.2d 1165, 1172 (1990); *Commonwealth v. Riggins,* 374 Pa.Super. 243, 253, 542 A.2d 1004, 1009 (1988). "A trial court is not required to accept requested instructions verbatim. The key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." *Commonwealth v. Cimorose,* 330 Pa.Super. 1, 10, 478 A.2d 1318, 1323 (1984) (citations omitted). See also: *Commonwealth v. Faulkner,* 528 Pa. 57, 79, 595 A.2d 28, 40 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992); *Commonwealth v. Prosdocimo,* 525 Pa. 147, 150, 578 A.2d 1273, 1274 (1990); *Commonwealth v. Ohle,* 503 Pa. 566, 582, 470 A.2d 61, 70 (1983), *cert. denied,* 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986). Therefore, " '[t]he refusal to give a proper instruction requested by a [defendant] is ground for a new trial only if the substance thereof has not otherwise been covered by the trial court's general charge.' " *Commonwealth v. LaMassa,* 367 Pa.Super. 54, 58, 532 A.2d 450, 452 (1987), quoting *Werner v. Quality Service Oil Co., Inc.,* 337 Pa.Super. 264, 269, 486 A.2d 1009, 1011 (1984).

A careful review of the trial court's jury instructions in the instant case makes it abundantly clear that the substance of appellant's proposed jury instructions was fully and adequately covered by the language chosen by the trial court. The jurors were apprised that, in order to convict appellant of homicide by vehicle while driving under the influence of alcohol, they had to be convinced beyond a reasonable doubt that appellant "recklessly or in a criminally negligent manner

. . . caused the death of Michelle Shoup as the direct result of his commission of the offense of driving under the influence." N.T. 209–210. The trial court also explained to the jury the concept of guilt beyond a reasonable doubt and explicitly instructed the jury that it could not find appellant guilty "based on mere suspicion of guilt." N.T. 198–199. These instructions made clear to the jury that causation had to be established beyond a reasonable doubt and that a conviction could not be based upon speculation or probability. The trial court's refusal to recite verbatim the requested instructions submitted by appellant is not a basis for a new trial.

The final issue raised by appellant is that the trial court erred by allowing into evidence the results of blood alcohol tests where the technicians who actually performed the tests were not present to testify at trial. The Commonwealth presented the testimony of Doctor Michael Feldman, the Director of Toxicology at the Laboratory where the tests had been performed. According to appellant, the testimony of the laboratory director regarding the results of appellant's blood tests constituted impermissible hearsay and deprived him of the right to cross-examine the persons who had performed the tests. These same arguments, however, were made and rejected by the Superior Court in *Commonwealth v. Kravontka,* 384 Pa.Super. 346, 558 A.2d 865 (1989). There, the Court held that blood alcohol test results could properly be admitted into evidence without the presence in court of the person who had performed the test. In so holding, the *Kravontka* Court determined that the defendant's right to confrontation was not violated because blood alcohol testing bears sufficient "indicia of reliability" so that "cross-examination of the technician concerning the inherently reliable blood test would have been of little benefit to the [defendant]." *Id.* at 355, 558 A.2d at 870. The Court further concluded that blood alcohol test results were qualified for admission under the business records exception to the hearsay rule. *Id.* at 357–358, 558 A.2d at 871.

24

In concluding that the evidence of appellant's blood alcohol test results was properly admitted in the instant case, the trial court reasoned as follows:

Doctor Feldman testified about both his academic background and his position as the supervisor of the medical lab in which the test was performed. He testified as to the necessary chain of evidence requirements for proper testing; he identified the defendant's laboratory records, and he verified that the results were made contemporaneously with the transactions. In addition, the Court took judicial notice of the fact that the laboratory involved, Roche Biomedical Laboratories, was authorized by the Department of Transportation and the Department of Health under the Clinical Laboratory Act to conduct such business as set forth in *Pennsylvania Bulletin*, Volume 19, Number 27, July 8, 1989. Accordingly, the testimony and records of the laboratory were permissible and properly admitted into evidence under the Business Records as Evidence Act and the Motor Vehicle Code.

Trial Court Opinion at pp. 5–6. The trial court's reasoning in this case is consistent with the decision in *Commonwealth v. Kravontka, supra.* Therefore, the receipt of the evidence of appellant's blood alcohol test results on the basis of the testimony of Dr. Feldman was not error. See also: *Commonwealth v. Garofalo,* 386 Pa.Super. 363, 367–370, 563 A.2d 109, 111–112 (1989); *Commonwealth v. Karch,* 349 Pa.Super. 227, 229–230, 502 A.2d 1359, 1361 (1986); *Commonwealth v. Seville,* 266 Pa.Super. 587, 405 A.2d 1262 (1979).

Having found no basis to disturb the several verdicts of guilty, the judgment of sentence will be affirmed.

Affirmed.