J-S62023-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SHAWN ANTHONY THOMPSON, | : | |
| | : | |
| Appellant | : | No. 591 MDA 2017 |

Appeal from the PCRA Order February 27, 2017
in the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0002146-2012

BEFORE:    STABILE, PLATT,* and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:   **FILED DECEMBER 19, 2017**

Shawn Anthony Thompson (Appellant) appeals from the order entered on February 27, 2017, denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

A brief summary of the relevant facts and procedural history is as follows.  At approximately 2:10 A.M. on February 26, 2012, Harrisburg Bureau of Police ("HBP") received a call for a fight outside of Dragonfly night club and the Hardware Bar.  The Dragonfly and the Hardware Bar had just closed for the evening and a crowd of people were gathered outside.

[Appellant] and Tyrone Manley, Jr. (the "Victim") became engaged in a fist fight.  [Appellant] then stabbed the Victim four times.  The stab wounds were located on the right upper chest, on the back of the left arm, on the left lower chest, and on the left abdomen.  The Victim died as a result of the stab wounds.

After stabbing the Victim, [Appellant] dropped the knife and ran through the crowd.  A cab was parked in a parking lot with the rear sliding door open.  [Appellant] jumped into and attempted to take over the cab.  A struggle ensued between [Appellant] and the cab driver, at which time, the rear-view mirror of the cab was

_____

*Retired Senior Judge assigned to the Superior Court.

broken. HBP Officer Nicholas Ishman ("Officer Ishman") arrived at the scene and commanded Thompson to get out of the cab. Officer Ishman testified that [Appellant] had his left arm around the neck – around the back of the neck of the driver and his right hand was on the gearshift. [Appellant] was trying to force the gearshift down to put the vehicle in drive. Officer Ishman was able to pull [Appellant] out of the cab and handcuff him despite [Appellant's] struggle.

[Appellant] was charged with murder and criminal attempt-robbery of a motor vehicle. A jury trial was held on April 1-4, 2013. On April 4, 2013, the jury issued guilty verdicts on the charges of murder of the third degree and attempted robbery of a motor vehicle.

*Commonwealth v. Thompson*, 105 A.3d 32 (Pa. Super. 2014) (unpublished memorandum at 1) (internal citations and quotation marks omitted).

On June 17, 2013, Appellant was sentenced to 20 to 40 years of incarceration for the third-degree murder conviction and a consecutive term of five to ten years of incarceration for the attempted robbery conviction. On June 13, 2014, this Court affirmed Appellant's judgment of sentence. ***Id***. On January 15, 2015, our Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Thompson*, 106 A.3d 726 (Pa. 2015).

On April 20, 2015, Appellant timely filed a PCRA petition. The PCRA court appointed counsel. On August 5, 2015, counsel filed a "no merit" letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) (*en banc*), and *Commonwealth v. Finley*, 550 A.2d 214 (Pa. Super. 1988), and requested leave to withdraw from the case. The PCRA court permitted counsel

to withdraw and dismissed Appellant's petition without a hearing. Appellant timely filed a notice of appeal to this Court.

On appeal, this Court affirmed in part and reversed in part the PCRA court's order. Specifically, this Court concluded that an issue of arguable merit existed as to whether trial counsel was ineffective for failing to ensure the trial court charged the jury properly "on the meaning of 'intent.'" **Commonwealth v. Thompson**, 158 A.3d 185 (Pa. Super. 2016) (unpublished memorandum at 2). This Court set forth the following.

> The failure to adequately define and explain a felony or serious misdemeanor constitutes fundamental error. The absence of an instruction on the applicable *mens rea* requirements warrants a new trial. **Commonwealth v. Ketterer**, 725 A.2d 801, 807 (Pa. Super. 1999).
>
> The Crimes Code provides: "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). Moreover, the Crimes Code provides that a person acts "intentionally" with respect to a material element of an offense:
>
>> when: (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.
>
> 18 Pa.C.S. § 302(b)(1). Pennsylvania's Suggested Standard Jury Instructions provide a different definition of intent in its instruction on attempt: "A person cannot be guilty of an attempt to commit a crime unless he ... has a firm intent to commit that crime. If he ... has not definitely made up his ... mind—if his ... purpose is uncertain or wavering—he ... lacks the kind of intent that is required for an attempt." SSJI 12.901A(5). It is clear from these

definitions that "intent" has a specialized meaning under the law which the jury must learn in order to decide the issue of "attempted" robbery.

Here, the court instructed the jury that attempt requires intent[], but failed to provide the definition of "intent" within section 302(b)(1) or SSJI 12.901A(5). This fundamental defect may entitle [Appellant] to a new trial on the charge of attempted robbery of a motor vehicle.

*Ketterer* provides a useful analogy to this case. There, the defendant was charged with aggravated assault by vehicle while driving under influence, which the Vehicle Code defines as an assault "negligently" committed. 75 Pa.C.S. § 3735.1. The trial court failed to instruct the jury as to the meaning of "negligently" under section 302(b)(4), a stricter definition than the definition of negligence under tort law. *Ketterer*, 725 A.2d at 806-07; *see also* 18 Pa.C.S. § 302(b)(4) ([providing that] "[a] person acts negligently ... when he should be aware of a substantial and unjustifiable risk ... [that is] of such a nature and degree that the actor's failure to perceive it ... involves a **gross deviation** from the standard of care that a reasonable person would observe in the actor's situation") (emphasis added). We held that the lack of a negligence instruction under section 302(b)(4) "permit[ted] the jury to convict Appellant upon a showing of ordinary negligence," an error that required a new trial. *Ketterer*, 725 A.2d at 807.

The present case involves much the same error as in *Ketterer*. Merely stating that [Appellant] must act with "intent," as the trial court did here, improperly permitted the jury to apply its own lay understanding of "intent" to the evidence. Thus, we agree with [Appellant] that the court's failure to define the element of intent has arguable merit.

But because the court did not hold a hearing on [Appellant's] PCRA petition, we find that further proceedings in the [PCRA] court are advisable. The [PCRA] court should have the opportunity to determine in the first instance whether [Appellant] fulfills the other two prongs of the test for ineffectiveness, *i.e.*, whether the course of conduct pursued by counsel lacked any reasonable basis, and whether counsel's ineffectiveness prejudiced [Appellant]. We remand this case for an evidentiary hearing on these issues.

***Thompson***, 158 A.3d 185 (unpublished memorandum at 2-3).

Upon remand, the PCRA court appointed counsel on Appellant's behalf. A hearing was held on January 20, 2017. At that hearing, trial counsel for Appellant, Matthew Monaghan, Esquire, testified. He testified that he was primarily concerned with defending the murder charge and the defense to that was self-defense. In fact, he considered the attempted robbery charge a "throwaway charge." N.T., 1/20/2017, at 5. In addition, Attorney Monaghan pointed out that in connection with the murder-related charges,[1] the jury was instructed as to the definition of specific intent. ***Id***. at 7; ***see*** N.T., 4/1-4/2013, at 271 ("A person has the specific intent to kill if he has a fully-formed intent to kill and is conscious of his own intention. As my earlier definition of malice indicated, a killing by a person who has the specific intent to kill is a killing with malice. Stated differently, a killing is with specific intent to kill if it is willful, deliberate and premeditated."). Attorney Monaghan testified that he did not believe it was necessary for the trial court to re-iterate the definition of specific intent for the robbery charge. ***See*** N.T., 1/20/2017, at 7-8.

The PCRA court concluded that counsel was not ineffective. Specifically, the PCRA court found that trial counsel's strategy of focusing on the murder-related charges was reasonable, and that there was not a reasonable

---

[1] The jury was instructed on the elements of first-degree murder, third-degree murder, and voluntary manslaughter.

probability that the outcome of the trial would have been different. PCRA Court Opinion, 2/27/2017, at 4. Appellant timely filed a notice of appeal, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

On appeal, Appellant sets forth one issue for our review: "Was Appellant's trial counsel ineffective as a matter of law for his failure to object to defective jury instructions?" Appellant's Brief at 6.

We set forth the relevant principles of law for our review of a PCRA court's conclusion regarding the effective assistance of trial counsel.

> In reviewing the rulings of a PCRA court, we examine whether the PCRA court's determination is supported by the record and free of legal error.

> ***

> The U.S. Supreme Court has stressed that there is a strong presumption that counsel was effective, and the burden of overcoming the presumption rests with the defendant. **Strickland v. Washington**, 466 U.S. 668, 690 [] (1984). To obtain relief, the defendant must demonstrate that counsel's performance was constitutionally deficient and that the deficient performance prejudiced him. **Strickland**, 466 U.S. at 687[]. In Pennsylvania, we have applied the **Strickland** test by looking to three elements, two concerning performance, and one concerning prejudice. Respecting counsel's performance, the petitioner must establish that his underlying claim is of arguable merit and that no reasonable trial strategy existed for counsel's action or inaction. **Commonwealth v. Pierce**, [] 527 A.2d 973, 975 ([Pa.] 1987). The reasonableness of counsel's conduct is objectively measured[.] Respecting prejudice, we employ the **Strickland** actual prejudice test, which requires a showing of a reasonable probability that the outcome of the proceeding would have been different but for counsel's constitutionally deficient performance. "[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." **Commonwealth v. Spotz**, [] 84 A.3d 294, 312 ([Pa.] 2014)

(citations omitted)[.] A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim.

***Commonwealth v. Daniels***, 104 A.3d 267, 280-81 (Pa. 2014) (some citations omitted).

This Court concluded previously that there is arguable merit to Appellant's position that trial counsel was ineffective for failing to request a complete jury instruction for intent with respect to attempted robbery of a motor vehicle. However, Appellant still must prove the other two prongs of the test. We first consider whether Appellant was prejudiced by the incomplete instruction.

The trial court offered the following relevant instructions.

> In order to find the defendant guilty of attempting to commit a crime, you must be satisfied that the following elements have been proven beyond a reasonable doubt:
>
> First, that the defendant did a certain act. You heard the description of what occurred that evening.
>
> Second, that the defendant did the act with the intent to commit the crime of robbery of a motor vehicle.
>
> Third, that the act that the defendant did constituted a substantial step toward the commission of that crime.
>
> So, the crime is really, "What do we mean by this element called substantial step?" That's really what you have to decide.
>
> ***
>
> A person cannot be guilty of attempt to commit a crime unless he does an act that constitutes a substantial step toward the commission of that crime. An act is a substantial step if it is a major step toward the commission of the crime and also strongly

corroborates the jury's belief that the person at the time he did the act had a **firm intent** to commit the crime.

N.T., 4/1-4/2013, at 258-59 (emphasis added).[2]

Thus, compared to the standard instruction, the only statement missing from the trial court's instruction was the following: "If he … has not definitely made up his … mind—if his … purpose is uncertain or wavering—he … lacks the kind of intent that is required for an attempt." SSJI 12.901A(5).

At trial, Appellant testified that he "dove into the back slider passenger door" of the vehicle. N.T., 4/1-4/2013, at 193. Appellant asked the driver, "'Can you go, go, go?'" *Id*. According to Appellant, his "intent was just ask him, '"Can you take me off?' Can you take me from out of the area." *Id*. at 193-94. Appellant testified that he and the driver engaged in a "struggle." *Id*. at 193.

Based on the foregoing, Appellant's testimony confirms that he intended to utilize the vehicle to get away from the scene and was willing to engage in a struggle to do so. Appellant never wavered in this intent and only stopped when Officer Ishman was able to pull Appellant out of the car and into custody.

Because Appellant has set forth a claim that trial counsel was ineffective, he is required "to show that counsel's conduct had an actual adverse effect on

---

[2] In this Court's prior memorandum, it referenced only the first time "intent" was stated, but did not reference the second time, where "intent" was clarified to mean "firm intent." **Commonwealth v. Thompson**, 158 A.3d 185 (unpublished memorandum at 3).

the outcome of the proceedings." ***Commonwealth v. Fanase***, 667 A.2d 1166, 1172 (Pa. Super. 1995). Here, because Appellant's testimony established his intent was not uncertain or wavering, we conclude that including the additional intent-related language in the jury instruction would not have resulted in a different outcome for Appellant. Therefore, Appellant was not prejudiced by trial counsel's failure to request this instruction. ***See id***. (holding counsel was not ineffective in failing to request a no-adverse inference instruction, even where the trial court would have had to give it had it been requested, because Fanase could not demonstrate that he was prejudiced). Accordingly, Appellant cannot prevail on his claim of ineffective assistance of counsel.[3]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2017

---

[3] Because we have concluded that Appellant did not satisfy the prejudice prong, we need not consider whether counsel had a reasonable basis for failing to request this instruction.